Elston *v.* Industrial Lift Truck Co., Appellant.

Argued November 20, 1964. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Robert F. Blanck,* with him *McWilliams, Wagoner & Troutman,* for appellant.

*Joseph R. Thompson,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, January 17, 1966:

The genesis of this appeal lies in an industrial accident which occurred in New Jersey. William Elston, a Pennsylvania resident employed by the Hussman Refrigerator Company at its plant in Haddonfield, New

Jersey, sustained an injury in the course of his employment while operating a fork-lift truck. The truck had been recently purchased by Elston's employer from the Industrial Lift Truck Company, Inc., a Pennsylvania corporation located in Philadelphia, Pennsylvania.

As a result of his injury, Elston became entitled to benefits under the New Jersey Workmen's Compensation Act. 34 N.J. Stat. Ann. Chs. 15-1 to 15-127 (1959). Pursuant thereto, he entered into an agreement with his employer, Hussman, providing for the payment of such benefits.

Subsequently, Elston, acting in accordance with New Jersey law, which permits an injured employee covered by workmen's compensation to pursue an action for negligence against a third-party tortfeasor, filed suit in Pennsylvania against Industrial. The complaint alleged, inter alia, that Industrial had failed properly to rebuild and test the truck before delivery to Hussman.

In turn, Industrial sought to join Hussman, Elston's employer, as an additional defendant by filing a third-party complaint alleging that Hussman, by reason of its conduct, was jointly and severally liable. Hussman, in its answer to Industrial's complaint, asserted compliance with New Jersey Workmen's Compensation Act and raised the affirmative defense that under that state's law further liability was thereby precluded. It thereupon moved for judgment on the pleadings. The court, giving effect to the New Jersey law, granted the motion and this appeal by Industrial followed.

Industrial does not dispute the consequences which follow from the application of New Jersey law. Under the law of that state, when an employee entitled to workmen's compensation benefits pursues a common law action against a third party based upon negligence, the third party is barred from joining and claiming

contribution from the plaintiff's statutory employer. *Public Service Elec. & Gas Co. v. Waldroup,* 38 N.J. Super. 419, 119 A. 2d 172 (App. Div. 1955); *Farren v. N. J. Turnpike Auth.,* 31 N.J. Super. 356, 106 A. 2d 752 (App. Div. 1954); *Bertone v. Turco Products, Inc.,* 252 F. 2d 726 (3d Cir. 1958); see *Hagen v. Koerner,* 64 N.J. Super. 580, 166 A. 2d 784 (App. Div. 1960) (dictum); cf. *Stillwell v. McGrath,* 85 N.J. Super. 252, 204 A. 2d 385 (Law Div. 1964). Thus, under New Jersey law, Hussman, as Elston's statutory employer, could not be joined by Industrial as an additional defendant.

Industrial, however, contends that the law of New Jersey is not applicable in the instant suit. It urges that the appropriate reference should be to the law of Pennsylvania which allows a limited form of contribution from a negligent statutory employer to a third-party tortfeasor. *Brown Equipment Rental Corp. v. Dickey,* 397 Pa. 454, 155 A. 2d 836 (1959); *Shaull v. A. S. Beck New York Shoe Co., Inc.,* 369 Pa. 112, 85 A. 2d 698 (1952); *Maio v. Fahs,* 339 Pa. 180, 14 A. 2d 105 (1940); *Stark v. Posh Construction Co.,* 192 Pa. Superior Ct. 409, 162 A. 2d 9 (1960). Accordingly, the application of Pennsylvania law would permit the instant joinder but would limit the amount recoverable by Industrial from Hussman to the latter's liability under the Workmen's Compensation Act. *Brown Equipment Rental Corp. v. Dickey,* 397 Pa. 454, 155 A. 2d 836 (1959); *Maio v. Fahs,* 339 Pa. 180, 14 A. 2d 105 (1940); see *Hader v. Coplay Cement Mfg. Co.,* 410 Pa. 139, 155, 189 A. 2d 271, 279 (1963).

Thus, the sole question presented on appeal is one of choice of law, and the issue to be determined is whether the court below erred in applying the law of New Jersey to preclude Industrial's third-party action against Hussman.

The issue of third-party contribution in the context of workmen's compensation has been characterized as "perhaps the most evenly-balanced controversy in all of compensation law." 2 Larson, Workmen's Compensation Law §76.10 (1961 ed.). Although both New Jersey and Pennsylvania provide for contribution between joint tortfeasors, N. J. Stat. Ann. 2A: 53A-1 et seq.; Act of July 19, 1951, P. L. 1130, §§1-8, 12 P.S. §§2082-89 (Supp. 1964), they have resolved the issue of contribution in the area of workmen's compensation differently. New Jersey law is in accord with the generally prevailing practice of insulating a statutory employer from contribution. 2 Larson, Workmen's Compensation Law §76.21 (1961 ed.); McCoid, The Third Person in the Compensation Picture: A Study of the Liabilities and Rights of Non-Employers, 37 Tex. L. Rev. 389, 437-38 (1959); Note, Contribution and Indemnity: The Effect of Workmen's Compensation Acts, 42 Va. L. Rev. 959, 963 (1956). This result has been reached on the following ground: "[T]he employer is not jointly liable to the employee in tort; therefore he cannot be a joint tortfeasor. The liability that rests upon the employer is an absolute liability irrespective of negligence, and . . . is the only kind of liability that can devolve upon him whether negligent or not. The claim of the employee against the employer is solely for statutory benefits; his claim against the third person is for damages. The two are different in kind and cannot result in common liability. . . ." 2 Larson, Workmen's Compensation Law §76.21 (1961 ed.). Absent such common liability, it is reasoned, the parties may not be deemed joint tortfeasors. Thus, contribution may not be permitted. See, e.g., *Baltimore Transit Co. v. State,* 183 Md. 674, 39 A. 2d 858 (1944); *Zotta v. Otis Elevator Co.,* 64 N.J. Super. 344, 165 A. 2d 840 (App. Div. 1960); *Farren v. New Jersey Turnpike Auth.,* 31 N.J. Super. 356, 106 A. 2d 752 (App. Div. 1954); Mc-

Coid, The Third Person in the Compensation Picture: A Study of the Liabilities and Rights of Non-Employers, 37 Tex. L. Rev. 389, 437 (1959), and cases cited therein; Annot., 95 A.L.R. 2d 1096, 1108-11 (1964).[1]

Pennsylvania, however, giving recognition to the equities underlying contribution, allows a recovery by the third-party tortfeasor to the extent of the employer's liability under workmen's compensation. *Brown Equipment Rental Corp. v. Dickey,* 397 Pa. 454, 155 A. 2d 836 (1959); *Shaull v. A. S. Beck New York Shoe Co., Inc.,* 369 Pa. 112, 85 A. 2d 698 (1952); *Maio v. Fahs,* 339 Pa. 180, 14 A. 2d 105 (1940); see Note, Contribution and Indemnity: The Effect of Workmen's Compensation Acts, 42 Va. L. Rev. 959, 967, 976 (1956).[2] In so restricting recovery, Pennsylvania preserves the limited liability feature of its workmen's

---

[1] *Hill Lines, Inc. v. Pittsburgh Plate Glass Co.,* 222 F. 2d 854 (10th Cir. 1955), illustrates another approach taken by some courts to deny contribution. There the court adopted a less conceptual view and ruled simply that the exclusive liability clause of the workmen's compensation act abrogated any liability of the employer for contribution to a third-party tortfeasor.

The view of some federal courts that a right of contribution exists in admiralty despite the "exclusive" nature of the employer's liability under the Longshoremen's and Harbor Workers' Compensation Act, see *Portel v. United States,* 85 F. Supp. 458 (S.D.N.Y. 1949); *The S.S. Samovar,* 72 F. Supp. 574 (N.D.Cal. 1947); *Rederii v. Jarka Corp.,* 26 F. Supp. 304 (S.D.Me. 1939), has been rejected by the Supreme Court of the United States in *Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp.,* 342 U.S. 282, 72 S. Ct. 277 (1952), reversing *Baccile v. Halcyon Lines,* 187 F. 2d 403 (3d Cir. 1951).

[2] Implicit in these holdings is the view that the definition of "joint-tortfeasors" does not require that they have a common liability toward the injured party but only that their combined conduct be the cause of the injury. See Note, Contribution and Indemnity: The Effect of Workmen's Compensation Acts, 42 Va. L. Rev. 959, 967 (1956).

compensation act while at the same time giving partial effect to its policy in favor of contribution between joint tortfeasors.[3]

New Jersey, on the other hand, presumably has determined that the equities which support contribution between concurrently negligent tortfeasors are not compelling in the workmen's compensation context. Under Workmen's Compensation, an expeditious and certain remedy is provided for employees who sustain work injuries by the imposition of an absolute and determinate, although limited, liability upon the employer. *Wilson v. Faull*, 27 N.J. 105, 115, 141 A. 2d 768, 774 (1958); see *Cardillo v. Liberty Mutual Ins. Co.*, 330 U.S. 469, 476, 67 S. Ct. 801, 806 (1947); *Girardi v. Pennsylvania Power & Light Co.*, 174 F. Supp. 813, 816 (E.D. Pa. 1959), aff'd sub nom. *Girardi v. Lipsett, Inc.*, 275 F. 2d 492 (3d Cir. 1960); *Hale v. Savage Fire Brick Co.*, 75 Pa. Superior Ct. 454, 462 (1921). The employee, however, surrenders his right to seek damages in an action at law in return for his right to recover without reference to fault. *Wilson v. Faull*, 27 N.J. 105, 115, 141 A. 2d 768, 774 (1958). Such exclusivity is justified on the theory that workmen's compensation assures a

---

[3] Absent such a limitation on contribution, the employer could complain with considerable cogency that he has been compelled to contribute to a recovery by the employee beyond the amount that the latter would be entitled to under workmen's compensation. Thus, he would be exposed to a potentially larger liability in those circumstances in which a third-party tortfeasor was involved than where his own negligence was the sole cause of the injury. The limited liability feature of workmen's compensation would be subverted under such circumstance. See 2 Larson, Workmen's Compensation Law §76.10 (1961 ed.).

By limiting contribution, Pennsylvania has been able to pursue its policy of requiring joint-tortfeasors to share the burden of their fault without dislocating its statutory compensation scheme. See Note, Contribution and Indemnity: The Effect of Workmen's Compensation Acts, 42 Va. L. Rev. 959, 966-67 (1956).

predictable recovery for any work injury and represents a compromise that inures to the ultimate benefit of the employer, employee, and public at large. See *Wilson v. Faull*, supra.

Given this comprehensive scheme for the distribution of loss occasioned by industrial accidents, New Jersey does not recognize the right of one whose liability remains predicated exclusively on fault, and who neither participates in nor contributes to the program, to shift part of his liability onto one within the purview of the statute merely on the basis of the equitable notion that those mutually at fault should bear a like burden. Since the employer is absolutely liable under the program, New Jersey has elected to disregard fault as a criterion of liability even with respect to contribution between concurrently negligent parties. The third-party tortfeasor's liability is based upon a finding that his negligence was the proximate cause of the injury. New Jersey has therefore determined that the mere fact that the employer may have also been negligent does not warrant contribution when balanced against the fact that the employer remains liable in those instances in which he was not at fault and no recovery can be obtained from a third-party tortfeasor.

It is evident that New Jersey and Pennsylvania have developed different policies in those instances in which the theories underlying contribution and workmen's compensation intersect. We are faced, then, with the task of determining which state's resolution of the problem should prevail under the circumstances in the instant case. Cf. *McSwain v. McSwain*, 420 Pa. 86, 215 A. 2d 677 (1966); *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A. 2d 796 (1964).

The specific question presently before us is one of first impression in this Commonwealth.[4] Moreover,

---

[4] The issue of the determinative law on the question of contribution between joint-tortfeasors outside of the context of work-

there are relatively few cases decided in other jurisdictions on point and those which our research has revealed contain little in the way of detailed analysis. See, e.g., *Roberson v. Bitner,* 221 F. Supp. 279 (E.D. Tenn. 1963); *Moretz v. General Electric Co.,* 170 F. Supp. 698 (W.D. Va. 1959), reversed in part 270 F. 2d 780 (4th Cir. 1959); *Tuffarella v. Erie Railroad Co.,* 17 App. Div. 2d 484, 236 N.Y.S. 2d 503 (2d Dep't 1962). In each of these cases, as in those dealing with choice of law with respect to contribution in general,[5] reference has been made to the law of the place of the injury. The Restatement, in line with the general approach there taken, treats the issue as one to be determined by resort to "the local law of the state which has the most significant relationship with the occurrence and with the parties . . . ." Restatement 2d, Conflict of Laws, §§379, 390(d), 403(b) (Tent. Draft No. 9, 1964). And although such a general statement has limited utility in any specific instance, to the extent that the Restatement suggests that the conflict be resolved by analysis rather than by resort to a mechani-

men's compensation has previously been before this Court. In *Builders Supply Co. v. McCabe,* 366 Pa. 322, 77 A. 2d 368 (1951), the court resolved the issue by resort to the law of the place of the injury. However, the considerations which motivated the result have been rejected by our more recent decisions. Compare *Builders Supply Co. v. McCabe,* supra, with *McSwain v. McSwain,* 420 Pa. 86, 215 A. 2d 677 (1966); *Griffith v. United Air Lines, Inc.,* 416 Pa. 1, 203 A. 2d 796 (1964).

Most cases to date have taken the approach employed in *Builders Supply Co. v. McCabe,* supra, and have applied the law of the place of the injury. See Annot., 95 A.L.R. 2d 1096 (1964); Restatement 2d, Conflict of Laws, §390(d) (Comment) (Tent. Draft No. 9, 1964). The Restatement, however, questions the correctness of these decisions in light of the growing realization that all issues involved in tort litigation need not be governed by the same law. Restatement 2d, Conflict of Laws, §390(d) (Comment) (Tent. Draft No. 9, 1964).

[5] See ibid.

cal rule, we adopt its treatment of the problem. Cf. *McSwain v. McSwain*, 420 Pa. 86, 215 A. 2d 677 (1966); *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A. 2d 796 (1964).

In resolving the instant conflict, it is significant to note an analogous problem which has been more frequently litigated. A number of courts have been confronted with the issue of whether to permit recovery for tort against a defendant declared immune from such liability by the workmen's compensation act of one of the states factually involved in the litigation.[6] In such instances, the immunity granted has almost invariably been respected.[7]

In *Wilson v. Faull*, 27 N.J. 105, 141 A. 2d 768 (1958), the plaintiff, employed by a New Jersey construction subcontractor, was injured in the course of his employment in Pennsylvania. After receiving benefits from his immediate employer under the New Jersey Workmen's Compensation Act, he brought an action in tort in that state against the general contractor. Under the law of New Jersey, the state of the employment relationship, the general contractor was amenable to suit for negligence. Pennsylvania, however, the state of the injury and conduct, declared him immune from such liability under its workmen's compensation act.

In dismissing the suit, the court reasoned that since Pennsylvania had provided for an expeditious and assured recovery for such injuries, plaintiff should not be

---

[6] See, e.g., *Willingham v. Weyerhaeuser Timber Co.*, 221 F. 2d 5 (9th Cir. 1955); *Jonathan Woodner Co. v. Mather*, 210 F. 2d 868 (D.C. Cir. 1954); *Tucker v. Texas Co.*, 203 F. 2d 918 (5th Cir. 1953); *Willingham v. Eastern Airlines*, 199 F. 2d 623 (2d Cir. 1952); *Scott v. White Eagle Oil & Refining Co.*, 47 F. 2d 615 (D. Kan. 1930); *Wilson v. Faull*, 27 N.J. 105, 141 A. 2d 768 (1958); *Barnhart v. American Concrete Steel Co.*, 227 N.Y. 531, 125 N.E. 675 (1920); cf. *Stacy v. Greenberg*, 9 N.J. 390, 88 A. 2d 619 (1952).

[7] See ibid.

permitted to subvert that program merely because benefits provided by New Jersey made resort to the Pennsylvania fund unnecessary in the particular instance. Thus, the court stated: "Fundamental compensation policy dictates that where an employer is required to provide compensation benefits by the law of the state having a legitimate interest in a work-injury, under which the injured employee could claim a compensation remedy against the employer, the state of the forum should recognize the correlative immunity conferred upon such an employer by the law of the foreign state. . . ." *Wilson v. Faull*, 27 N.J. 105, 120, 141 A. 2d 768, 777 (1958); see also *Willingham v. Weyerhaeuser Timber Co.*, 221 F. 2d 5 (9th Cir. 1955); *Jonathan Woodner Co. v. Mather*, 210 F. 2d 868 (D.C. Cir. 1954); *Tucker v. Texas Co.*, 203 F. 2d 918 (5th Cir. 1953); *Willingham v. Eastern Airlines*, 199 F. 2d 623 (2d Cir. 1952); *Scott v. White Eagle Oil & Refining Co.*, 47 F. 2d 615 (D. Kan. 1930); *Barnhart v. American Concrete Steel Co.*, 227 N.Y. 531, 125 N.E. 675 (1920); 2 Larson, Workmen's Compensation Law §88.10 (1961 ed.).

Such deference to the exclusivity feature of the workmen's compensation law of a state having a significant interest in the work-connected injury is in accord with the position taken by the Restatement which provides: "Recovery for tort . . . will not be permitted in any state if the defendant is declared immune from such liability by the workmen's compensation act (a) of any state under which the plaintiff has obtained an award for the injury, or (b) of a state under which the plaintiff is entitled to obtain an award for the injury, provided that this state is the state (1) where the injury occurred, or (2) where the employment is principally located . . . ." Restatement 2d, Conflict of Laws, §403(b) (Tent. Draft No. 9, 1964). The approach taken is justified on the ground that "to deny a person the immunity granted him by a workmen's compensation

act of a given state would frustrate the efforts of that state to restrict the cost of industrial accidents and to afford a fair basis for predicting what these costs will be." Id. at comment b. Moreover, it is clear that difficulties in funding such a program are presented when the exposure to unlimited common law liability remains possible. Thus, it is thought unfair to deny a person who provides an assured recovery absent fault the quid pro quo of protection against common law tort liability. See ibid.

In the instant case, however, Industrial, the party asserting a right to contribution, is a stranger to the compensation system. And, in a narrow sense, unlike an employee covered by New Jersey's compensation program, it received no quid pro quo from that state to compensate for the loss of its right to contribution. This factor, though, does not alter or in any way weaken the crucial consideration that New Jersey has the paramount interest in the manner by which its workmen's compensation program will be administered. New Jersey has undertaken to define the obligations of an employer for injuries to his employees and makes that obligation the exclusive liability of the employer. See *Wilson v. Faull*, 27 N.J. 105, 141 A. 2d 768 (1958); *Zotta v. Otis Elevator Co.*, 64 N.J. Super. 344, 165 A. 2d 840 (App. Div. 1960); *Farren v. N. J. Turnpike Auth.*, 31 N.J. Super. 356, 106 A. 2d 752 (App. Div. 1954). In return for providing compensation benefits for any and all injuries which arise in the course of employment, irrespective of fault, the employer is not only granted immunity from common law liability, but is also given a right of subrogation to the extent of compensation benefits paid in the event a third-party tortfeasor is held liable for the injury. 34 N.J. Stat. Ann. Ch. 15-40. This right of subrogation exists irrespective of the fact that the employer may have been concurrently negligent. See *Farren v. N. J. Turnpike*

*Auth.,* 31 N.J. Super. 356, 106 A. 2d 752 (App. Div. 1954).

Aside from the conceptual gloss employed to reach this latter result, the underlying theory is that a third-party tortfeasor who has proximately caused a work-injury may not shift a part of his liability onto the "fund" to which he does not contribute. Were full contribution permitted, the limited liability protection afforded the employer as a quid pro quo for his absolute liability would be subverted merely because of the intervention of a third-party tortfeasor. See 2 Larson, Workmen's Compensation Law §76.10 (1961 ed.). And although Pennsylvania has avoided this aspect of the problem by limiting the amount of contribution to that for which the employer would be obligated under workmen's compensation, New Jersey has determined that even such limited recovery may not be permitted. Under the view taken by New Jersey, the equitable considerations underlying contribution do not warrant the imposition of additional costs on a fund designed to distribute the cost of industrial accidents without reference to the moral concept of fault. Thus New Jersey has determined not to interject even limited contribution into a system which has rejected fault as the primary criterion of loss distribution.

In resolving the instant conflict, it is significant to note that the Pennsylvania policy in favor of permitting contribution between joint tortfeasors has been subjected to modification when that policy conflicts with our workmen's compensation program. The limitation imposed on the extent to which the employer is subjected to liability to the third-party tortfeasor reflects a paramount concern with the policies underlying workmen's compensation and the priority of those policies over the equities underlying contribution.

In the instant case, however, Industrial seeks to have the Pennsylvania rule, one reflecting an accom-

modation developed to meet the needs of our workmen's compensation program, interjected into litigation arising out of a New Jersey work-injury. Were Industrial to prevail, the Pennsylvania policy of permitting contribution would be imposed upon the New Jersey program of workmen's compensation. Pennsylvania, thus, would interject a limitation on the manner by which New Jersey could determine to meet the social costs of its industrial accidents. Such an approach, in our view, would be unsound. The extent to which the New Jersey program of workmen's compensation should assimilate the equities underlying contribution is a determination more appropriately to be made by that state.

We are not unmindful that the New Jersey determination not to allow contribution in the workmen's compensation context places, in the instant case, the entire burden of the loss upon a Pennsylvania corporation. However, the Pennsylvania policy in no way seeks to absolve it of responsibility for tortious conduct. It merely reflects the view that our workmen's compensation program will not be disrupted by giving limited range to the equities underlying contribution. But we deal here not with our act. Industrial, having elected to transact business in New Jersey and having exposed itself to a policy and program which fails to give rein to contribution,[8] must be governed by that determination. See Restatement 2d, Conflict of Laws, §§379, 390 (d), 403(b) (Tent. Draft No. 9, 1964); cf. *Wilson v. Faull*, 27 N.J. 105, 141 A. 2d 768 (1958); *Willingham v. Weyerhaeuser Timber Co.*, 221 F. 2d 5 (9th Cir. 1955); *Jonathan Woodner Co. v. Mather*, 210 F. 2d 868 (D.C. Cir. 1954); *Tucker v. Texas Co.*, 203 F. 2d 918 (5th Cir. 1953); *Willingham v. Eastern Airlines*, 199 F. 2d 623 (2d Cir. 1952); *Scott*

---

[8] Industrial, in its answer to Elston's complaint, admitted having sold the fork-lift truck to Hussman. It also failed to deny, and thus admitted, having delivered the truck in New Jersey.

*v. White Eagle Oil & Refining Co.,* 47 F. 2d 615
(D.Kan. 1930); *Barnhart v. American Concrete Steel
Co.,* 227 N.Y. 531, 125 N.E. 675 (1920).

Under the present circumstances, we are led to con-
clude that the issue here presented was properly re-
solved by the court below by reference to the law of
New Jersey, the state whose workmen's compensation
program is most significantly involved and the state,
therefore, with the most significant interest in the ap-
plication of its policies to the instant dispute.

Judgment affirmed.

Mr. Chief Justice BELL concurs in the result.